PAGE & BACON, Plaintiffs in Error, *vs.* GARDNER, Defendant in Error.

20  507
63a 330
20  507
82a 454
—————
20  507
88a 475

1. Neither an original general assignee nor one substituted by the appointment of the court, under the statute, (R. C. 1845,) in possession of chattels claimed under the assignment, will be protected from suit by a party claiming the same chattels under a conveyance from the assignor previous to the assignment, on the ground of being an officer or *quasi* officer of court.

2. A general conveyance of all debts that " may be due" to the grantor, at a
specified subsequent date, without a schedule, passes to the grantee such a
title as will enable him to recover from a subsequent general assignee of the
grantor at least all accounts (or the money collected upon them) *contracted,*
though not *due* at the date of the conveyance.

### Error to St. Louis Court of Common Pleas.

This action was brought by Page & Bacon, to recover money
in the hands of the defendant, Gardner, as general assignee
under the statute, (R. C. 1845,) of George K. Budd, collected
on accounts claimed by the plaintiffs, as purchasers under a
deed of trust executed by Budd previous to the assignment, and
to recover possession of uncollected accounts claimed by them
in like manner.

On the 27th of September, 1852, Budd, by deed recorded
December 17, 1852, conveyed to Kellogg, in trust to secure a
note for $5000, payable to plaintiffs on the first of January,
1853, " all his right, title and interest in a newspaper called
the St. Louis Intelligencer, together with the type, presses,
paper and fixtures contained in the Intelligencer building, (de-
scribing them ;) also all assets which may be due the said In-
telligencer newspaper, the good will of said paper, and the
subscription list of the same at the date of the maturity of the
note." In case of the non-payment of the note at its matu-
rity, the trustee was authorized to sell the property conveyed,
upon twenty days' notice, at public auction, to the highest bid-
der, and execute a bill of sale to the purchaser. No schedule
of the debts owing to the Intelligencer establishment accompa-
nied this deed. The note not being paid, the trustee sold the
property pursuant to the terms of the deed of trust, and execu-
ted to the plaintiffs, who became the purchasers, a bill of sale
dated October 4, 1853, conveying the property by the same
description contained in the deed of trust.

On the 19th of Februry, 1853, Budd executed to J. G. Mc-
Clellan a deed of assignment for the benefit of his creditors,
conveying " all notes, bonds, bills, book accounts, dues, de-
mands or evidences of debt whatsoever," due or to become due

on any contract made before January 1st, 1853, growing out of the business of the St. Louis Intelligencer. This deed was accompanied by a schedule. McClellan took possession at once, and gave bond in compliance with the provisions of the statute regulating assignments, (R. C. 1845.) By order of the St. Louis Circuit Court, the defendant, Gardner, was subsequently substituted for McClellan, as assignee, and gave bond pursuant to the statute. When this suit was brought, the defendant was in possession of the book accounts of the Intelligencer establishment, and had collected $1500 on accounts due on the 1st of January, 1853. A portion of the accounts sued for accrued prior to September 27th, 1852, the date of the deed of trust, and a portion subsequent to that date. The plaintiffs made a demand upon the defendant for the money and accounts claimed by them, before suit was brought.

The Court of Common Pleas found facts substantially as above stated, and that the defendant was in possession of the money and accounts sued for, "under the order and appointment of the Circuit Court," and had never been discharged by that court; and upon these facts, declared that the plaintiffs could not recover, whereupon they sued out this writ of error.

*Knox & Kellogg*, for plaintiffs in error. 1. By the bill of sale from Kellogg, the appellants acquired a perfect right and title to all the property, accounts and money in the hands of the respondent as assignee of George K. Budd. The cases which decide that a deed does not pass after acquired property are not applicable. Here, the debts accruing subsequent to the date of the deed of trust to Kellogg arose from the natural and ordinary use of the property and materials conveyed by that deed, and not from subsequent purchases. Besides, the finding shows that some of the money in the hands of the respondent was collected on accounts due and owing *at the date of the deed to Kellogg*. 2. The decision of the court below was based upon the idea that the respondent was not personally liable, because acting under the appointment of the Circuit Court, and that the appellants could only obtain their rights by an or-

33—VOL. XX.

of the Circuit Court—an idea erroneously supposed to be sanctioned in the case of *Gates* v. *Labeaume*, (19 Mo. Rep. 17.)

*J. A. Kasson*, for defendant in error. 1. Under the statute regulating assignments, (R. C. 1845,) the Circuit Court has the entire control of both assignee and assets. The property is in the custody of the court, the assignee being in fact but the agent of the court. Any claim against the fund, or the assignee on account of the fund, must be made in the court having both in charge. These assets were ordered by the court to be put into defendant's hands, he having been appointed for that purpose by the court. To allow him to be drawn into divers courts by conflicting claims, incurring expenses in each, as a defendant in his own right, would operate as a great hardship upon him, and involve him in his relation to his own court and creditors provided for by his deed. ( *Curling* v. *Hyde*, 10 Mo. Rep. 375. *Brooks* v. *Cook*, 8 Mass. 274.) No officer under the immediate control and direction of a court, and having funds by its order, can be reached except through his own court. 2. As against a subsequent purchaser, nothing passed to plaintiffs' trustee, or from him to plaintiffs at the sale, so far as *choses in action* were concerned, because the deed was so far null and inefficient for uncertainty. There was no schedule of names of debtors, dates or amounts of indebtedness. There was nothing to identify the accounts or notes so alleged to be transferred. They could not be legally transferred in that way. A legal transfer for a valuable consideration, (19 Mo. Rep. 26,) prior to the sale to plaintiffs, had already been made ; and plaintiffs have no lien which they can pursue in this action against Gardner. From such an indefinite deed as that to Page & Bacon's trustee, no notice is presumable to Gardner, as touching these proceeds. 3. No debts which accrued after its execution could pass by virtue of the prior executed deed of trust. (4 Metcalf, 306. 13 Metcalf, 32.)

RYLAND, Judge, delivered the opinion of the court.

1. It is contended by the counsel for the respondent, Gardner, in this case, and is, indeed, the chief ground of his de-

fence to the plaintiff's action, that Gardner, the assignee, holding the property as an officer of the law, is not responsible in his individual capacity to an action for the effects in his hands as assignee; but that a proceeding must be instituted, in the court having authority over this assignment, against the fund itself.

The assignment by George K. Budd to Sanford B. Kellogg, trustee, to secure the payment of a debt to Page & Bacon, duly acknowledged and recorded, being taken and considered as valid, has the effect to pass the property and effects embraced in it to the said Kellogg, as such trustee, against the subsequent assignee.

Assuming this to be so, then the proceeding to recover the property claimed may be against the party having the property and effects in his hands, and need not (perhaps could not) be against the fund. Here, the plaintiff's petition is proceeding upon the assumption that the effects now sought to be recovered constituted no part of the trust fund in the hands of Gardner, the second trustee.

Courts of equity support assignments not only of *choses in action* but of contingent interests and expectations, and also of things which have no present actual potential existence, but rest on mere possibility only. (See *Mitchell, Assignee of Ropes,* v. *Winslow et al.*, 2 Story's Rep. 631.)

A. and B. being engaged in 1839 in the manufacture of cutlery, borrowed of C. a sum of money, payable in four years, with interest semi-annually, and on the same day gave him a deed of all the machinery in their manufactory, with all the tools and implements of every kind thereunto belonging and appertaining, together with all the tools and machinery for the use of the said manufactory, *which they might at any time purchase for four years from that date, and also all the stock which they might manufacture or purchase during the said four years.* On the 26th of August, 1843, A. and B. filed their petition to be declared bankrupts, and subsequently were so declared, and an assignee was appointed. On July

16th, 1842, for breach of the conditions of the mortgage, the agent of C. took possession of the property, including the machinery, &c., which were in the possession of the manufactory when the mortgage was made, and also machinery, tools, and stock in trade, which had been made and purchased after the execution of the mortgage. On petition of the assignee in bankruptcy of A. and B. for an order of court authorizing him to take possession, it was held, upon this state of facts, 1st, that the mortgage and possession taken in July 16, 1842, constituted such a lien in favor of the mortgagee to the property acquired subsequent to the time of executing the mortgage, as is protected under the provision in the second section of the bankrupt act ; 2d, that such stipulations in a mortgage, in regard to property subsequently acquired, protect such property from other creditors of the mortgagor. Judge Story, in his opinion, after stating the facts and general principles governing such transactions, says : " Here, the true question is not whether the assignment of the property to be acquired *in futuro* is good at law, but whether it is good in equity ; for if it be, then, independently of any fraud (which is not pretended) as the assignee can take only what the bankrupt had a title to, subject to all equities, it follows, as a matter of course, that the petitioner, (the assignee,) has no claim on which he can found himself for relief under his petition. So that the question is, in reality, narrowed down to the mere consideration of this, whether the present mortgage, as to the future machinery, tools, and stock in trade to be put into the factory, (for there is no controversy as to those in *esse* at the time of the assignment,) is valid or not against the mortgagor ?"

He says : " Upon the best consideration which I am able to give the subject, I think it good and valid. Courts of equity do not, like courts of law, confine themselves to the giving of effect to assignments of rights and interests which are absolutely fixed and *in esse*. On the contrary, they support assignments not only of *choses in action*, but of contingent interests and expectancies, and also of those which have no pres-

ent actual or potential existence, but rest in mere possibility only."

In respect to the latter, it is true that the assignment can have no positive operation to transfer, *in presenti*, property in things not in *esse ;* but it operates by way of present contract, to take effect and attach to the things assigned, when and as soon as they come in *esse ;* and it may be enforced as such a contract *in rem* in equity. A different view has been taken by other courts, at law at least. (*Moody* v. *Wright*, 13 Metc. 27. *Mogg* v. *Baker*, 3 Mees. & Wels. 195. *Gale* v. *Burrell*, 7 Adol. & Ellis, N. S. 850.)

We now have no distinction between law and equity. Taking, therefore, the deed of trust made in this case by Budd to Kellogg as being valid, (for there is no pretence of fraud in it,) then the sale by the trustee, Kellogg, conveyed the property and effects sold to the purchasers, and they have the right to sue for it, not by pursuing the fund, but any one in whose hands their effects and property may be found.

The judgment below is reversed, and the cause remanded; the other judges concurring.