## Wright, *Appellant*, v. Bircher's Executor.

1. **Lien on Property yet to be Acquired.** One who has in contemplation the purchase of property may by contract impose a lien which will be valid and take effect when the property is acquired.

2. ——: LANDLORD'S LIEN FOR RENT: PRIORITY OF LIENS: EQUITY : NOTICE. The proprietors of a hotel took a lease for a term of years upon an unfinished building to be used, when completed, as part of their hotel. The rent was payable monthly. The lease was to commence, or take effect on the first of the month after the completion of the building. It contained a stipulation that all fixtures, furniture and other improvements should be bound for the rent. When the lease was signed, the house was unfurnished, but before it took effect certain furniture and fixtures had been placed in the house. *Held*, that the stipulation created a lien, valid at least in equity, that this lien was for the full amount of the rent reserved and not simply for any portion that might from time to time become delinquent, and that it had priority of a mortgage given after the lease took effect but before any rent became delinquent, to a person having knowledge of the existence of the stipulation.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*M. L. Gray* and *J. M. Holmes* for appellant.

1. The conveyance or lien embodied in the quoted clause in the lease has no reference to the property in dispute, because it was not in existence at the time the lease was made, and the language of the clause is *in præsenti*, not *in futuro*.

2. If the clause refers to the property in dispute, it conveys nothing and creates a lien on nothing, at law, be-

cause the property was not in existence at the making of the lease, and a conveyance or mortgage of non-existing property is void at law. *McCaffrey v. Wooden*, 62 Barb. 316; *Butterfield v. Baker*, 5 Pick. 522; *Munsell v. Carew*, 2 Cush. 50; *Ross v. Wilson*, 7 Bush (Ky.) 29 ; *Moody v. Wright*, 13 Met. 17 ; *Head v. Goodwin*, 37 Me. 181; *Barnard v. Eaton*, 2 Cush. 294 ; *Codman v. Freeman*, 3 Cush. 306 ; *Otis v. Sill*, 8 Barb. 102 ; *Gardner v. McEwen*, 19 N. Y. 123 ; *Tapfield v. Hillman*, 46 Eng. C. L. 243 ; *Dunn v. Thornton*, 50 Eng. C. L. 379 ; *Gale v. Burnell*, 53 Eng. C. L. 850.

3. It is equally void in equity as a conveyance, and is good only as a personal agreement, and is not a trust affecting the property. *Moody v. Wright*, 13 Met. 17 ; *Ross v. Wilson*, 7 Bush (Ky.) 29 ; *Hale v. Webb*, 28 Mo. 408; *Mogg r. Baker*, 3 Mees. & Welsb. 195 ; *Gale v. Burnell*, 7 Ad. & El. (N. S.) 850 ; *Morrill v. Noyes*, 56 Me. 458 ; *s. c.*, 3 Am. Law Reg. (N. S.) 18 ; *Pennock v. Coe*, 23 How. 117 ; *Otis v. Sill*, 8 Barb. 102 ; 2 Hilliard on Mortgages, Ch. 43 ; *Phelps v. Murray*, 2 Cooper (Tenn. Ch. R.) 746 ; *Belding v. Read*, 3 Hurlst. & Colt. 961.

4. The equitable doctrine laid down in *Holroyd v. Marshall*, 10 House of Lords 191, will not help out the case of respondent, because the rule that an agreement to convey will be treated as a conveyance when the agreement is one of which a court of equity will decree specific performance, cannot apply to this case, because the agreement embodied in the clause in the lease would not be specifically enforced by a court of equity for the following reasons: (*a*) It is incomplete. (*b*) It is uncertain and vague. (*c*) It is not sufficiently definite in the description of the subject matter. (*d*) It is too uncertain in its terms, nowhere specifying what property is to be bound, or for what rent, whether the rent in arrears, or the rent for the term, it is to be bound. *Shelton v. Church*, 10 Mo. 774 ; *Ivory* v. *Murphy*, 36 Mo. 534 ; *Fish v. Lightner*, 44 Mo. 268 ; *Taylor v. Williams*, 45 Mo. 80 ; *Underwood v. Underwood*, 48 Mo. 527 ; *Foster v. Kimmons*, 54 Mo. 488 ; *Mastin v. Halley*, 61 Mo.

196; *Paris v. Haley*, 61 Mo. 453; *Sitton v. Shipp*, 65 Mo. 297.

5. The utmost into which the clause can be tortured is an agreement to secure the rent that may at any time be in arrears on some property; and at the time appellant's deeds of trust were executed there was no rent in arrear, and consequently they would take precedence of any lien for rent accruing after their execution. *Dalton v. Laudahn*, 27 Mich. 529; *Burgess v. Kattleman*, 41 Mo. 480.

*Chas. B. Howry* and *W. L. Scott* for respondent.

1. The clause in the lease, " all the furniture, fixtures and other improvements of the hotel, shall be bound for the rent and the fulfillment of · the other covenants herein contained," constituted the writing, as respects this clause, an equitable mortgage. Hilliard on Mortgages, p. 648 and notes ; *Lincoln v. Purcell*, 2 Head 143 ; *Blackburn v. Tweedie*, 60 Mo. 505; *Flagg v. Mann*, 2 Sumner 533 ; *Foster v. Reynolds*, 38 Mo. 553 ; *Bank of Utica v. French*, 3 Barb. Ch. 293; *Collins v. Carle*, 13 Ill. 254; 1 Hill. on Mortg., 212, 213; *Shirras v. Craig*, 7 Cranch 34. The present is unlike the case of *Burgess v. Kattleman*, 41 Mo. 483.

2. By the true construction of this lease it was to go into operation on the 1st day of August, 1873, and not before. The property in controversy was placed in the hotel on the 9th day of July, 1873. Thus the property was *in esse*, and had been placed in the hotel, in accordance with the intention ·of·the parties, before the instrument went into operation.

3. But if this property was not *in esse* at the date the instrument went into operation, nevertheless, inasmuch as it was, within the contemplation of the parties, to be thereafter acquired, and was definitely pointed out by the instrument, viz : " furniture, fixtures and other improvements of the hotel," the hotel referred to being then in process of erection ; it was a valid, equitable mortgage, operative

against the mortgageors and all purchasers purchasing from or claiming under them, with notice. *Mitchell v. Winslow,* 2 Story 630; *Fletcher v. Morey,* 2 Story 555; *Willink v. Morris Canal Co.,* 3 Green Ch. 377; *In re Howe,* 1 Paige 129; *Voorhis v. Langsdorf,* 31 Mo. 451; *State to use of Decker v. D'Oench,* 31 Mo. 453; *State to use of Voullaire v. Tasker,* 31 Mo. 445; *Macomber v. Parker,* 14 Pick. 497; *Benjamin v. Elmira R. R. Co.,* 49 Barb. 441; *Sillers v. Lester,* 48 Miss. 613; *Smithurst v. Edmunds,* 1 McCarter (N. J.) 408; *Keyes v. Mil. R. R. Co.,* 25 Wis. 691; *Pierce v. Emory,* 32 N. H. 484; *Seymour v. C. & N. F. R. R. Co.,* 25 Barb. 286; *Arnault v. Annis,* 16 La. Ann. 225; *Trust Co. v. Hendrickson,* 25 Barb. 484; *Phillips v. Winslow,* 18 B. Mon. 431; *Galveston R. R. Co. v. Cowdrey,* 11 Wall. 459; *Brett v. Carter,* 3 Cent. Law Jour. 286; *Butt v. Ellet,* 19 Wall. 544; *Langton v. Horton,* 1 Hare 549; *Holroyd v. Marshall,* 9 Jur. (N. S.) 213; s. c., 10 H. of L. 191; *Abbott v. Stratton,* 3 Jo. & Lat. 603; *Whitworth v. Gaugain,* 3 Hare 416; *Douglas v. Russell,* 3 Jur. 524; 1 Myl. & K. 488; *Brown v. Tanner,* L. R. 3 Ch. 597; *In re Ship Warre,* 8 Price 269; *Mulhall v. Quinn,* 1 Gray 105; *Twiss v. Cheever,* 2 Allen 40; *Lannan v. Smith,* 7 Gray 150; 1 Powell on Mortgages, p. 190; 25 Barb. 284; Grounds & Rudiments of Law and Equity, 75; 1 Vesey 409. Good against persons affected with notice. *Davis v. Clay,* 2 Mo. 161; *Major v. Bukley,* 51 Mo. 227; *Blackburn v. Tweedie,* 60 Mo. 505. The agreed statement of facts shows that appellants had notice.

*W. H. H. Russell* also for respondent.

Plaintiff having accepted the mortgage with knowledge of the conditions of the lease and of Bircher's lien upon the furniture, fixtures, etc., she took the mortgage subject to his lien. It matters not whether there was any rent actually due on the 9th day of February, 1874; at the time of the execution of the mortgage; the clause in the lease secured the rent for the entire period of the lease. As a

matter of equity it was not necessary that the furniture contemplated in the lease should have been in the possession, or was actually owned by Malin at the time the lease was signed; as soon as it was purchased and placed in the hotel it became subject to the lien for rent. *Holroyd v. Marshall,* 10 H. L. Cases, 190; *Morrill v. Noyes,* 3 Am. L. Reg. (N. S.) 30; *Brett v. Carter,* 3 Cent. L. J. 286.

HENRY, J.—This cause was submitted to the circuit court on the 6th day of March, 1877, upon an agreed statement of facts, in substance the following: Bircher was the owner of a six story building in St. Louis, on the southeast corner of Sixth and Chestnut streets, adjoining the Laclede hotel, and on the 7th day of February, 1873, while work was in progress upon it to convert it into a hotel building, leased it to John W. and Walter Malin, to be used by them, when completed, as a hotel. The date of the lease was February 7th 1873. It was signed in duplicate, each of the two parties receiving one. At that date there were no fixtures or furniture in the building, it being then unfinished, but they were afterward to be placed in the building by the Malins, and were so placed in the month of July, 1863. The term for which the premises were leased was ten years, to commence on the —— day of —— 187—, and the lessees agreed to pay an annual rent of $32,000, in monthly payments of $2,660.66, to be made on the last day of each month; and it was stipulated in the lease that all fixtures, furniture and other improvements should be bound for the rent and fulfillment of other covenants therein contained, on the part of the lessees, and any forfeiture for non-fulfillment of conditions therein, might be enforced at any day or time however distant, after such failure or default should happen. The building and premises to be kept free of nuisances, and not to be underlet, except the basement, without the lessor's consent, under a penalty of forfeiture. The concluding stipulation of the lease was as follows: "This lease shall

commence on the first of the month after the completion of said building, and the within blanks shall be filled that day. It is further agreed that connection can be made with the Laclede hotel."

The Malins were proprietors of the Laclede which was furnished for hotel purposes; and after the completion of the Bircher building they used the two buildings in connection, and they were called and known as the Laclede-Bircher hotel. The Bircher building was completed about the 1st day of August, 1873, by which time the furniture and fixtures in controversy in this suit were placed therein by the lessees, and the blanks in the lease, specifying the date of the commencement of the lease, were then filled, and the instrument duly recorded. On the 9th day of February, 1874, John and Walter Malin, the lessees, borrowed of Nannie M. Wright $25,000, and to secure their note given for the amount, executed a deed of trust conveying all of the personal property in the two buildings to M. L. Gray, as trustee, said Nannie M. Wright then having actual notice of the provision of the lease stipulating for a lien by Bircher on the property in the Bircher building. Afterward, on the 26th day of May, 1875, they borrowed of said Nannie M. Wright an additional sum of $10,000, and to secure their note for that amount executed another deed of trust conveying to said Gray the same property. Bircher entered and took possession of the property in the Bircher building, claiming a lien upon the goods for rent in arrear, and this is a controversy betwixt him and Nannie M. Wright, who insists that Bircher's lease failed to create a lien, either in law or equity, upon the property in dispute. The judgment of the circuit court was in favor of Bircher, and on appeal, was affirmed by the court of appeals, and is here on appeal from that judgment.

One of the principal questions discussed by counsel relates to the validity of a sale, or mortgage of goods and chattels not *in esse* at the date of the mortgage or sale. One might write a volume, if inclined to review all of the

adjudged cases on the subject. We are not so inclined, and deem it necessary only to state what we regard as the conclusion reached by the best considered cases. It has been frequently and ably discussed, both in the English and American courts, and highly respectable authorities might be cited in support of either of the opposite views urged by the respective counsel here. The earlier English and American authorities, we think, sanction the doctrine contended for by the counsel of Nannie M. Wright. *Jones v. Richardson*, 10 Met. 488; *Moody v. Wright*, 13 Met. 17; *Gardner v. McEwen*, 19 N. Y. 125; *Head v. Goodwin*, 37 Me. 187; *Barnard v. Eaton*, 2 Cush. 294; *Winslow v. Merchants Insurance Co.*, 4 Met. 306; *Codman v. Freeman*, 3 Cush. 306; *Otis v. Sill*, 8 Barb. 108; *Lunn v. Thornton*, 1 Man., Gran. & Scott (C. B.) 379. The doctrine maintained in the most of these cases was clearly stated in *Otis v. Sill*, and was substantially " that a grant of goods, not in existence, or which do not belong to the grantor at the time of the execution of the deed, is void, unless the grantor ratify the grant by some act done by him with that view, after he has acquired the goods; that an assignment of property to be acquired in future, if valid in equity, is only valid as a contract to assign when the property shall be acquired, and is not an assignment of a present interest in the property, and if enforced in equity, can only be enforced as a right under the contract, and not as a trust attached to the property as against the creditors of the assignor or mortgageor; that the mortgage of such subsequently acquired property can only be regarded as a mere contract to give further mortgage on such property, binding on the mortgageor personally, and the only remedy of the mortgagee on such contract is as a general creditor."

The broadest contrary doctrine was announced by Mr. Justice Story in *Mitchell v. Winslow*, 2 Story 630, in the following language : " It seems to me the clear result of all the authorities, that whenever the parties, by their contract, intend to create a positive lien or charge, either upon

real or personal property, whether it is then *in esse* or not, it attaches in equity as a lien or charge upon the particular property as soon as the assignor or contractor acquires a title thereto, against the latter and all persons asserting a claim thereto under him, either voluntarily or with notice, or in bankruptcy." This has been followed by this court in the case of *Page & Bacon v. Gardner*, 20 Mo. 508; in New York, in the case of *Seymour v. C. & N. F. R. R. Co.*, 25 Barb. 305, in which *Otis v. Sill*, *supra*, was cited and distinctly disapproved; also in *Sillers v. Lester*, 48 Miss. 526; *Benjamin v. Elmira R. R. Co.*, 49 Barb. 441; *Brett v. Carter*, U. S. district court of Mass., reported in 3rd vol. Cent. Law Jour. 286; *Morrill v. Noyes*, supreme court of Maine, reported in Am. Law Reg. vol. 3 (N. S.) p. 18; 56 Me. 458; and in England, in *Langton v. Horton*, 1 Hare 549; *Holroyd v. Marshall*, 9 Jur. (N. S.) 213; *Whitworth v. Gaugain*, 3 Hare 416; *Douglas v. Russell*, 3 Jur. 512; *s. c.*, 1 Mylne & K. 488. The opinion of the court in *Morrill v. Noyes*, delivered by Davis, J., is an able review of the authorities, and states the doctrine more clearly and precisely than any other case to which our attention has been called. It does not recognize the validity of mortgages of mere contingencies, or sales or mortgages of property which "the mortgageors might purchase, if they should purchase any," but the sale or mortgage must relate to property then in the contemplation of the parties to be purchased or acquired by the vendor or mortgageor.

*Hale v. Webb*, 28 Mo. 408, is cited by appellant as establishing the proposition that the lien declared in the lease in question is void in equity, does not create a trust affecting the property. This is a misconception of the case. But one question was discussed in that opinion, and that was the effect of a clause in the mortgage which authorized the mortgageor to remain in possession of the mortgaged property, a stock of hardware, and continue his business as a hardware merchant, selling the goods, etc. This clause was held to invalidate the mortgage, and while

the mortgage included the property then in store, as well as such as should at any time during the existence of the trust belong to the mortgageor, either in said store or any other store or place, there was no discussion as to the effect of that provision. NAPTON, J., did observe that: "The case of *Mitchell v. Winslow*, 2 Story 630, referred to in the opinion of this court in *Page & Bacon v. Gardner*, 20 Mo. 507, cannot be reconciled in all respects with the decisions of this court in *Brooks v. Wimer*, 20 Mo. 506, and several subsequent cases reiterating the same doctrine. So far as the case (*Mitchell v. Winslow*) goes to sustain the judgment in *Page & Bacon v. Gardner*, no exception is designed to be taken to it, as the opinion and judgment in that case is not supposed to conflict with the views expressed in *Brooks v. Wimer*." Now, the only question in *Brooks v. Wimer* was, as to the effect of a clause in the mortgage permitting the mortgageor to retain possession of the mortgaged goods and "dispose of them without any accountability to any one for the proceeds of the sale." This court held the mortgage fraudulent upon its face, while in *Mitchell v. Winslow* the contrary was maintained, and it is that portion of the opinion of Judge Story which Judge NAPTON declared in conflict with *Brooks v. Wimer*. In *Page & Bacon v. Gardner*, the other question discussed by Mr. Justice Story in *Mitchell v. Winslow* was one of the questions under consideration (while the point upon which *Brooks v. Wimer* was decided was not before the court), and the views of Judge Story were fully approved, and in *Hale v. Webb* Judge NAPTON expressly states "that no exception is designed to be taken to it," evidently referring to that portion of the opinion of Story, J., which related to the mortgage of property to be acquired subsequently to the execution of the mortgage. We may, therefore, with confidence, assert that the doctrine of this court on the subject is in perfect harmony with that announced in *Mitchell v. Winslow*, and we see no reason to depart from it.

It may also be observed that by the last stipulation of

the lease it was to commence on the first of the month after the completion of the building, and blanks left in the lease for that day, were to be filed when the lease commenced, and this was accordingly done. When the lease took effect the property was all in the building, and was sufficiently described in the lease to make the lien reserved effective in equity if not in law.

In any view, however, that may be taken of the case, Bircher had a lien upon the property for the rent to become due by its terms. If a lien at law, then good against Mrs. Wright without regard to any notice to her other than that imported by the record of the lease. If in equity only, then equally good against her, because she had notice of the stipulation in the lease when she accepted her mortgages.

The position that the lien was only for rent that might at any time be in arrear, and there being none in arrear when the mortgages to Nannie M. Wright were executed, there was no lien in favor of Bircher at that time, cannot be maintained. By a fair construction of the lease the lien reserved was for the full amount of the rents, which by its provisions would accrue within the term for which the house was let. It was not to secure the first installment of rent which the lessees might fail to meet, only, as counsel contend, but each installment, and it created a lien as well for the last as for any preceding installment. The court of appeals, in its opinion delivered in the case, fully and satisfactorily disposed of that question, and, therefore, it is only necessary to state our conclusion on the subject. All concurring, the judgment is affirmed.