SMITH-WALLACE SHOE COMPANY, Respondent, v. JAS. WILSON, Appellant.

Kansas City Court of Appeals, November 4, 1895.

1. **Fraudulent Conveyances**: CHATTEL MORTGAGE ON MERCHANDISE: DEBT DUE: ADVANCES: AFTER ACQUIRED GOODS: POSSESSION RETAINED. A chattel mortgage failing to state when the secured debt would be due, and providing for future advances to replenish the mortgaged stock of merchandise, and applying the mortgage to after acquired goods, and giving the mortgagor possession and a right to sell in the regular course of business by turning over the daily proceeds to the mortgagee, is not void on its face by reason of any or all of said provisions.

2. ———: CHATTEL MORTGAGES: FIXTURES. A chattel mortgage may be good as to the fixtures though bad as to the merchandise.

*Appeal from the Clay Circuit Court.*—HON. E. J. BROADDUS, Judge.

REVERSED AND REMANDED.

*Crosby Johnson* for appellant.

(1) A mortgage to secure future advances is valid. *Foster v Reynolds*, 38 Mo. 553; Jones on Chattel Mortgages, secs. 94, 95, 97. (2) The fact that a mortgage is to cover future additions to the property does not render it fraudulent or void. *State v. Tasker*, 31 Mo. 441; *Voorhis v. Langdorf*, 31 Mo. 452; *State v. Byrne*, 35 Mo. 147; *Drug Co. v. Robinson*, 81 Mo. 18. (3) A mortgage reserving to the mortgagor the right of possession and power to sell the mortgaged property is not fraudulent or void, where it stipulates that the proceeds are to be applied to the payment of the mortgage debt. *Hubbell v. Allen*, 90 Mo. 574; *Metzner v. Graham*, 57 Mo. 404. (4) Proof that the mortgagor had reserved

the right to sell the mortgaged property in the usual and ordinary course of trade, will not justify an attachment against his property, where the mortgage further provides that he shall pay over the proceeds to the mortgagee to be credited on the debt. *Hopkins v. Hastings*, 21 Mo. App. 263; *Foster v. Mullanphy Co.*, 16 Mo. App. 150; 92 Mo. 79.

*William A. Wood, J. M. Sandusky, H. F. Simral, H. L. Moore* for respondent.

(1) A conveyance creating a lien upon personality for an indefinite period, the natural operation of which is to the benefit of the grantor, is fraudulent and void as to his creditors. *State to use v. Mueller*, 10 Mo. App. 87; Bump on Fraudulent Conveyances, 400, 401; *Grocer Co. v. Miller*, 53 Mo. App. 116. (2) A chattel mortgage is to the use of the mortgagor, and, therefore, fraudulent in law, if it confers on the mortgagor a power to substitute other property in place of any covered by the mortgage. *State to use v. Busch*, 38 Mo. App. 440; *Goddard v. Jones*, 78 Mo. 518; *Grocer Co. v. Miller*, 53 Mo. App. 116. (3) The law is well settled that, where the impeaching facts appear expressly or by necessary implication upon the face of the deed of trust or mortgage, it is the duty of the court to declare the instrument void at the instance of creditors. *Grocer Co. v. Miller*, 53 Mo. App. 117; *Bullene v. Barrett*, 87 Mo. 185; *Weber v. Armstrong*. 70 Mo. 217; *Walter v. Wimer*, 24 Mo. 63; *Smith v. Ham*, 51 Mo. App. 433. (4) As there were no limitations upon the operations of the chattel mortgage in question, except the will of the mortgagee, it will be presumed that it was the purpose of the mortgagor and mortgagee that it should continue for an indefinite period. *Grocer Co. v. Miller*, 53 Mo. App. 116; *Thompson v. Foerstel*, 10 Mo. App.

297; *Hepburn v. Mueller*, 10 Mo. App. 87. (5) Upon the record presented here, the judgment was for the right party and should be affirmed, as under the law and facts no other verdict could have been rendered. *Bushey v. Glenn*, 107 Mo. 331; *Wolf v. Campbell*, 110 Mo. 114; *Fortune v. Fife*, 105 Mo. 433; *Milstead v. Mfg. Co.*, 49 Mo. App. 191. Especially is this true where the trial is by the court. *Tyler v. Larimore*, 19 Mo. App. 445; *Calley v. Loomas*, 56 Mo. App. 322; *State ex rel. v. Benedict*, 51 Mo. App. 642; *Norton v. Paxton*, 110 Mo. 456.

ELLISON, J.—This action is attachment, wherein a lot of personal property, consisting of a stock of goods and fixtures, were attached, on the ground of an alleged fraudulent mortgage. The defendant filed a plea in abatement and on the trial thereof the circuit court declared the chattel mortgage fraudulent in law upon its face. We set out the portions of the mortgage necessary to construe its effect:

"Know all men, etc., that I, James Wilson, etc., in consideration of the sum of $2,360 to me paid by the Kidder Savings Bank, of Kidder, Missouri, the receipt whereof is hereby acknowledged, and of the further considerations hereinafter mentioned, do by these presents convey unto the said Savings Bank, the general stock of merchandise, consisting principally of clothing, boots, shoes, hats, caps, notions, groceries and all other merchandise, counters, show cases, store furniture and fixtures and all personal property of whatsoever kind and description now contained in the east room of the said Savings Bank building in the town of Kidder, Mo., also all the furniture and fixtures contained in the second story of the said Bank building, occupied as a hall; also all goods, wares and merchandise which may hereinafter be added from time to time

to said stock of goods in the due course of trade; also all notes and book accounts. Provided always, and it is hereby agreed by and between the parties hereto, that if I, the said James Wilson, shall well and truly pay unto the said bank, or assigns, the sum above specified and all sums of money that may be hereafter due and owing by me to said bank, by reason of said bank having advanced to me the funds that may be required to pay for goods purchased by me to replenish said stock and all other and further advancements which shall hereafter be made by said bank on account of said stock of goods, then this conveyance shall be null and void. And I, the said Wilson, do further agree and promise and it is hereby made a part of the consideration of this sale, to keep full and accurate account of all sales of said stock of goods in the usual course of trade and render to said bank a full and complete statement of same as often as said bank may require; and that all the moneys and proceeds of same shall be daily turned over to and deposited in said bank and by said bank credited on the indebtedness of said Wilson. And I, the said Wilson, do further agree with the said bank that in case of any default upon my part in the performance of any of the stipulations or agreements herein mentioned to be kept or performed by me, or in the event of a sale or removal, etc., said bank, its successors or assigns may take the said property or any part thereof into their possession and proceed to sell the same, etc.. Until default be made in the terms and stipulations of this agreement, the said Wilson is to remain in the full and quiet possession of the goods and property herein conveyed."

The mortgage has none other than the ordinary provisions, except that, *first*, there is no statement of when the debt of $2,360 would be due; *second*, there is a provision for future advances of money to replenish

the stock; *third,* there is a provision applying the mortgage to after acquired goods; *fourth,* it provided for the mortgagor retaining possession and selling the stock in usual course by turning over the daily proceeds.

We are of the opinion that neither of these extraordinary provisions, separately or together, had the effect to render the deed void on its face, as a matter of law. The fact that there was no contract when the specified indebtedness should become due left the debt, as in other like cases due on demand. The provision for future advances was a legal provision; the law being that a valid chattel mortgage may be given for future advances. 1 Cobbey on Chat. Mort., sec. 138; Jones on Chat. Mort., sec. 94.

So also is the provision that the mortgage shall apply to future acquired property. That question has been before our supreme court on different occasions, where it was held that a mortgage of future acquired property was not void, but had the effect to create an equitable lien on the property when it came into existence. *Page v. Gardner,* 20 Mo. 507; *Wright v. Bircher,* 72 Mo. 179; *Frank v. Playter,* 73 Mo. 672; *Rutherford v. Stewart,* 79 Mo. 216; *France v. Thomas,* 86 Mo. 80; *Petring v. Chrisler,* 90 Mo. 649.

If such mortgage is not void, but creates a valid equitable lien, it is not consistent with reason to say that the giving of such mortgage was a fraud in law. The mortgage being valid for the purposes for which it was given, the mortgagor does not subject himself to an attachment for executing it. It is not only valid between the parties, but as against creditors having notice thereof. *Mitchell v. Winslow,* 2 Story, 630; *Borden v. Croak,* 131 Ill. 68; *McCaffrey v. Wooden,* 65 N. Y. 459. And in our opinion, such a mortgage, duly recorded, would be constructive notice, as in ordinary chattel

mortgages. It was so held in *Holroyd v. Marshall*, 10
H. L. Cas. 191, 227—a case which has been frequently
approved in this country, though not as to the particu-
lar point of constructive notice. The point was decided
in *Gregg v. Sanford*, 24 Ill. 17. As soon as the
property which the mortgage contemplates shall be
afterward acquired, comes into existence as the
property of the mortgagor, the lien of the mortgage
attaches without any further act on the part of either
the mortgagor or the mortgagee. And the mortgage
being upon record, reason would suggest that it would
be as effective as constructive notice is in ordinary cases.

The remaining extraordinary provision found in
the mortgage relates to the retention of possession with
power of sale in the usual course of trade. This pro-
vision is validated by the further condition that the
proceeds of the sale shall be turned over daily to the
mortgagees to the extinguishment of the debt. This
condition has been frequently decided to relieve chattel
mortgages from the rule which ordinarily renders them
void and fraudulent, where the mortgagor keeps pos-
session and sells for his own use.

Plaintiff's counsel have cited us to some authority
which, we think, is not applicable to the mortgage in
question. *Oliver Grocery Co. v. Miller*, 53 Mo. App.
114, involved the consideration of a chattel deed of
trust, which distinguished between creditors, classify-
ing them into divisions and making unwarranted dis-
tinctions between them and attempting to change their
legal status and rights as against the debtor, and un-
dertaking to coerce them into a surrender of their legal
rights. We do not regard the case at bar as at all like
that case. In the case of *Goddard v. Jones*, 78 Mo.
518, the chattel deed of trust mainly covered live stock,
which the debtor retained possession of, with power of
sale without accounting for the proceeds of such sale

to the creditor, thus putting it in the power of the parties to continue the protection of the deed of trust indefinitely, without any decrease of the debt. It further provided for the substitution, at the discretion of the debtor, of other cattle in place of those conveyed. While under the mortgage in controversy here, the debt must necessarily be decreased by the sales, and it can not be said, *as a matter of law*, that the power to replenish the stock of goods on advances made by the mortgagee was a scheme to indefinitely continue a debt to the detriment of other creditors. That the power in the debtor, with the consent of the creditor, to replenish a stock of merchandise is not regarded as fraudulent, as a matter of law, is evident from cases which have been before the supreme court other than those we have already cited as sustaining the validity of mortgages of future acquired property. By reference to the cases of *State v. Tasker, Voorhis v. Langdorf,* and *State v. D'Oench,* 31 Mo. 445–455, it will be seen that they are not cases where the proceeds of sales were to be turned in to the creditor to the extinguishment of the debt. Besides, in the last case just cited, the court says that "we do not think the mere expressions referred to in the present deed as necessarily tending to a conclusion that the grantor was to sell the goods, or to make purchases to replenish the stock. Additions are spoken of, but who was to make them? It is not said the grantor shall do so, or have the power to do so. The additions might be such as the trustee or his agent was authorized to make." So, by the terms of the deed here, the additions were not to be made at the will of the grantor, but on advances which the creditor should make for that purpose, and which, we will assume, he might think necessary to continue advantageously, sales of the main stock, which went to the extinguishment of his claim. We ought not to assume, since the lan-

guage of the mortgage does not justify it, that the future advances were by contract or understanding, to be made at the will of the debtor and thus put it in his power to keep up a perpetual debt. We are, therefore, of the opinion that the mortgage should not have been declared fraudulent on its face, and that the case should be determined upon evidence.

And it is well enough, in this connection, to call attention to the fact that this mortgage covers, not only a stock of merchandise, but store furniture and fixtures as well. As to these, there seems to be no reason for holding the mortgage invalid in law or in fact, since they were not, under the terms of the deed, to be sold by the debtor, and, in every probability, were not understood between the parties, aside from the deed, to be a matter of sale by the debtor; though as to this the evidence will disclose. The ruling in the case last cited, as well as in *Bullene v. Barrett*, 87 Mo. 185, is that the deed may be good as to the fixtures, though bad as to the merchandise.

The judgment is reversed and the cause remanded. All concur.